UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILBERT TERRELL STURGIS,

      Petitioner,

          v.                            CAUSE NO. 3:18-CV-972-JD-MGG

WARDEN,

      Respondent.

## OPINION AND ORDER

Wilbert Terrell Sturgis, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for murder under Cause No. 46C01-409-MR-129. Following a jury trial, on May 12, 2005, the Laporte Superior Court sentenced Sturgis to sixty-five years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On the morning of September 20, 2004, teenager Barbara Day was dismissed early from Michigan City High School because of an earlier altercation she had with another teenager known only by his nickname, "Spider." Day went to her home in Michigan City and was joined there by at least eight other individuals, including twenty-six-year-old Sturgis. Day came up with a plan, to which everyone agreed, to go to the westside of Michigan City to look for Spider and to fight him.

The group at Day's house agreed to go to a school bus stop near 9th and Willard in Michigan City at about the time the bus was scheduled to drop off students. The group drove there in two cars, with Sturgis riding in a car driven by Natasha Harris. After arriving at the intersection, the group parked and got out of the cars. Day believed she saw Spider's cousin in a group of boys that included fifteen-year-old Blake Kelly walking along the sidewalk.

Day approached the group of boys and began asking Spider's supposed cousin where he was. This boy denied knowing where Spider was. Kelly then told Day and her friends that they were not going to "jump him," and Day told him to be quiet because he had nothing to do with it. One of Day's cousins, Willie Martin, began threatening to fight Kelly but Day told him to leave Kelly alone.

While Day and her group were arguing with Kelly and his group, Sturgis walked up to Kelly and shot him in the jaw with a handgun. Kelly was unarmed, as was everyone else in the two groups besides Sturgis. This initial shot did not kill Kelly. Sturgis then put the handgun up against the side of Kelly's head and shot him again, this time killing him. Police soon obtained several statements identifying Sturgis as Kelly's killer, and they obtained a warrant for Sturgis's arrest.

* * *

The State charged Sturgis with murder and Class A felony kidnapping.

* * *

The jury found Sturgis guilty of murder but not guilty of kidnapping. Additionally, the jury entered a finding for sentencing purposes that Sturgis had a history of criminal or delinquent activity. On May 12, 2005, the trial court sentenced Sturgis to a term of sixty-five years after finding no mitigating circumstances and that his criminal history was aggravating.

ECF 4-6 at 2-5; *Sturgis v. State*, 40 N.E.3d 1280 (Ind. App. 2015).

Sturgis argues that he is entitled to habeas relief because trial counsel did not object to the use of shackles during trial and because he did not strike a juror who was friends with a detective. He also argues that he is entitled to habeas relief because, at the

post-conviction stage, his appellate counsel did not communicate with him regarding

his appeal.[1] Ineffective assistance of counsel at the post-conviction stage is not a

cognizable basis for habeas relief. *Coleman v. Thompson*, 501 U.S. 722, 752 (U.S. 1991)

("There is no constitutional right to an attorney in state post-conviction proceedings.").

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the

petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A);

*Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). For a federal court to hear his or her

claims, a habeas petitioner must have fully and fairly presented his or her federal claims

to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment

"does not require a hypertechnical congruence between the claims made in the

federal and state courts; it merely requires that the factual and legal substance remain

the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d

at 788). It does, however, require "the petitioner to assert his federal claim through one

complete round of state-court review, either on direct appeal of his conviction or in

post-conviction proceeding." *Lewis*, 390 F.3d at 1025. "This means that the petitioner

must raise the issue at each and every level in the state court system, including levels at

which review is discretionary rather than mandatory. *Id.* Sturgis did not present the

claim that trial counsel should have used a peremptory strike on a juror to the Court of

---

[1] While somewhat ambiguous, the context of this claim in the petition suggests that Sturgis refers to appellate counsel at the post-conviction stage with this claim. To the extent that Sturgis intended to assert a claim regarding appellate counsel at the direct review stage, such a claim would be procedurally defaulted because Sturgis did not present it during post-conviction proceedings.

Appeals of Indiana or the Indiana Supreme Court. ECF 4-9, ECF 4-13. Therefore, this claim is procedurally defaulted.

Sturgis asserts that counsel chose not to raise the peremptory strike claim on appeal of his petition for post-conviction relief. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). As a general rule, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as cause." *Maples v. Thomas*, 565 U.S. 266, 280 (2012). "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017). However, the *Martinez* exception "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings. . . ." *Martinez*, 566 U.S. at 16. Because Sturgis presents no valid basis to excuse procedural default, the court will not further consider the peremptory strike claim.

## ANALYSIS

Sturgis argues that he is entitled to habeas relief because trial counsel did not

object to his shackles during trial.[2] "Federal habeas review exists as a guard against

extreme malfunctions in the state criminal justice systems, not a substitute for ordinary

error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015)

(quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants

are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To

---

[2] In the habeas petition, Sturgis presents his concerns regarding the use of shackles as an ineffective assistance of counsel claim rather than as a claim of trial court error. ECF 1 at 3.The Court of Appeals of Indiana addressed the trial court error at post-conviction stage, which arguably removed "any bar to federal court review that might otherwise have been available." *Roche v. Davis*, 291 F.3d 473, 482 (7th Cir. 2002). However, considering the claim asserted in the habeas petition, the court will focus on the performance of trial counsel rather than trial court error but notes that, even if Sturgis had asserted a claim of trial court error in his habeas petition, it would not have changed the outcome of this case.

warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland,* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

At trial, twelve eyewitnesses testified about the events leading up to the shooting. ECF 5-2, ECF 11-1. The victim's friends testified that they met the victim at the bus stop after school. ECF 5-2 at 144-165, 225-51. They each arrived by school bus; the fifteen-year old victim did not own a car and did not have a gun. *Id.* Those arriving with Sturgis testified that they were there to assist Barbara Day with pursuit of her teenage

assailant. *See e.g.,* ECF 11-1 at 19-20, 124-27, 198. The eyewitnesses largely agreed on the sequence of events, which included Barbara Day interrogating Derrell Jarrett about the location of the assailant and the victim's verbal defense of Jarrett, his friend. *See e.g.,* ECF 5-2 at 236-44, ECF 11-1 at 131-34. According to the eyewitnesses, Willie "Boze" Martin moved to fight the victim before Barbara Day called him off and informed him that the victim was not her assailant. *Id.* At about the same time, Sturgis shot the victim in the jaw. *Id.* With the victim doubled over, Sturgis walked over, aimed the gun at the back of the victim's head, and fired at point blank range. *Id.*

On cross-examination, Barbara Day testified that, as the victim prepared to fight Boze Martin, he reached for his pants in a manner that led her to believe that he had a gun. ECF 11-1 at 145-46. Day also testified that she heard him say, "Go to the trunk," which she believed meant that someone was getting a gun. *Id.* Similarly, the prosecution introduced Sturgis' confession in which he represented that the victim said, "This my car right here. . . . Matter of fact, I'll pop the trunk right now" and that the victim flinched. ECF 5-4 at 13-16. Sturgis represented that he believed that the victim was moving to grab a gun. *Id.* He also represented that he was twenty-six years old at the time of the shooting and that he did not know the teenagers involved in the underlying dispute. *Id.* at 8-11; ECF 11-1 at 245. No other eyewitnesses testified that the victim acted as though he had a gun or referenced a trunk, but several of them, including four of Sturgis's companions that day, expressly denied it. ECF 5-2 at 241, ECF 11-1 at 30, 108, 157-58, 186, 206-07.

At closing, trial counsel argued that Sturgis acted "under sudden heat" and asked the jury to convict him of voluntary manslaughter instead of murder. ECF 5-9 at 26-29. According to the jury instructions:

> The term "sudden heat" means an excited mind. It is a condition that may be created by strong emotion such as anger, rage, sudden resentment, or jealousy. It may be strong enough to obscure the reason of an ordinary person and prevent deliberate and meditation. It can render a person incapable of rational thought.

ECF 5-6 at 82.

On direct appeal, Sturgis did not challenge the use of shackles at trial. ECF 4-3. At the post-conviction relief stage, trial counsel testified that he objected to the shackles at a pretrial hearing and that he also objected at an in-chambers hearing.[3] ECF 5-8 at 13-14. He did not renew his objection during trial because he had objected twice and the trial court told him that his objection was on record. *Id.* According to the transcript of the pretrial hearing, on March 25, 2005, trial counsel objected to the prosecution's request that Sturgis remain shackled at trial. ECF 5-9 at 54-51. He argued that Sturgis's conduct did not suggest that such security measures were warranted. *Id.* The trial court responded, "Your objection was duly noted." *Id.*

At the post-conviction hearing, trial counsel testified that he also told Sturgis' appellate counsel about this objection, though this counsel was later replaced. *Id.* At trial, Sturgis' hands and feet were shackled, and the trial court advised him to keep his hands below the table to avoid alerting the jury to his shackles. *Id.* at 14-16. Sturgis

---

[3] The record does not contain a transcript of the in-chambers hearing.

testified that he kept his hands below the table because the shackles made movement

uncomfortable. *Id.* at 92-93. A detective testified that he interviewed the jurors at

Sturgis's trial, except for one juror and two alternates who were deceased. *Id.* at 102-14.

Nine of the jurors signed affidavits indicating that they did not observe shackles on

Sturgis and did not discuss shackles among themselves. ECF 5-9 at 120-42. One juror

attested that he assumed that Sturgis had shackles based on his limited movements but

that he did not observe shackles. *Id.* He also attested that the jurors did not discuss

shackles among themselves and that the shackles did not influence his vote.[4] *Id.*

The Court of Appeals of Indiana rejected the claim, reasoning that trial counsel

made a strategic decision to not object to the shackles at trial due to the futility of the

objection and to avoid alerting the jury to the shackles. ECF 4-12. The appellate court

found a lack of prejudice because the shackles were not visible or known to the jury and

because of the overwhelming evidence supporting the murder conviction. *Id.* The

appellate court also addressed the underlying claim by acknowledging that the trial

court erred by failing to make a record with specific findings on the decision to use

shackles on Sturgis. *Id.* However, the court concluded that this failure constituted

harmless error for the same reasons that it found a lack of prejudice by trial counsel. *Id.*

After reviewing the record, the court cannot conclude that the State court made

an unreasonable determination on this claim. To start, the record does not establish that

---

[4] At the hearing, the detective testified that the final juror had replied by email but that he did not have a hard copy of his affidavit at the time of the hearing. ECF 5-8 at 109. This affidavit is not included in the evidentiary record.

trial counsel performed deficiently by declining to object to the shackles at trial. He had

objected twice prior to trial and had reason to believe that further objections would be

futile and that his objection was preserved for appeal. In an appellate brief (ECF 5-9),

Sturgis relied on the proposition that "motions in limine do not preserve errors for

appeal; the defendant must reassert his objection at trial contemporaneously with the

introduction of the evidence," citing *Shoultz v. State*, 995 N.E.2d 647, 654 (Ind. App.

2013). The reasoning for this rule is to allow trial courts "to consider the evidence in the

context in which it is being offered and is able to make a final determination on

admissibility." *Clausen v. State*, 622 N.E.2d 925, 928 (Ind. 1993). Here, the prosecution

did not offer the use of shackles into evidence, and, unlike evidentiary determinations, a

decision on whether to shackle a criminal defendant for security purposes is rarely

dependent on the nuances of the evidence adduced at trial. Further, the record contains

no evidence to suggest that appellate counsel would have challenged the use of

shackles at trial but for trial counsel not objecting at trial.

The record also supports the State court's conclusion that the shackles did not

prejudice his case. The evidence that Sturgis committed murder rather than voluntary

manslaughter is overwhelming. Twelve eyewitnesses testified at trial, but only Barbara

Day, who may have been inclined to minimize her role in the death of her classmate,[5]

---

[5] At trial, the victim's friends testified that Barbara Day commanded her cohorts to "get him" or "shoot him" after arguing with the victim. ECF 5-2 at 171, 241. Further, her testimony that the victim said "go to the trunk" and that the victim "reached in his pants like he was going to shoot [Sturgis]" implausibly suggests that she believed her fifteen-year old classmate, who she had known "since forever" and who she described as a person "not known for carrying a gun," had one gun in his pants and another gun in a car trunk. ECF 11-1 at 132, 145-47.

corroborated Sturgis's narrative that the victim acted as if he had a gun and referenced a trunk. Even then, she omitted these material facts in her narrative and offered it only when prompted on cross-examination. Five witnesses, including four who arrived at the scene of the crime with Sturgis, expressly denied this narrative. The testimony that the victim was a fifteen-year old that did not have a car or a gun but instead arrived at the scene by school bus with his middle school friends also undermines the credibility of Sturgis' narrative. On this basis, there is a substantial likelihood that the jury did not credit Sturgis's narrative that the victim acted as if he had a gun.

The record further demonstrated that Sturgis was a twenty-six year old adult who had no personal stake in the high school dispute and did not know any of the teenagers involved. Absent persuasive evidence that the victim acted as if he had a gun, it is unclear how these circumstances could have "obscured the reason of an ordinary person," "rendered a person incapable of rational thought," or otherwise indicated that Sturgis committed voluntary manslaughter rather than murder. Moreover, even if Sturgis believed that the victim had a gun and that he needed to act to defend himself or others, the record contains no explanation as to why he shot the victim a second time in the head at point blank range as the victim doubled over from the first shot.

Additionally, the record indicates that none of the jurors observed Sturgis in shackles or discussed the shackles among themselves. One juror assumed that Sturgis was shackled based on his limited movements at trial, but even that juror attested that it did not affect his vote to convict Sturgis of murder or his vote to acquit Sturgis of kidnapping. Sturgis also contends that the shackles inhibited his ability to take notes

and to communicate with trial counsel. While this limitation may have been inconvenient and while the trial court erred by imposing it without making the necessary factual determinations, he does not elaborate on how it affected the outcome of the case.

The court finds *Stephenson v. Neal*, 865 F.3d 956 (7th Cir. 2017), to be instructive. In that case, the petitioner asserted that trial counsel was ineffective for failing to object to the use of a stun belt at a penalty phase hearing, and the jury sentenced him to death after a brief hearing. *Id.* at 957, 959. The Seventh Circuit found that the petitioner was entitled to habeas relief on this claim, noting the possibility that the stun belt may have caused the jurors to believe that the petitioner was violent and unpredictable and that it may have caused the petitioner to act nervously out of fear that it would be activated. *Id.* at 959. The court found that there was a reasonable probability that the jury's awareness of the stun belt affected the outcome of the penalty phase, reasoning, "Yet we know that four jurors were aware of the stun belt, and do not know what if anything they told the other jurors and therefore what role discovery of the stun belt may have played in the jury's determination to sentence him to death." *Id.*

In *Wrinkles v. Buss*, 537 F.3d 804, 822 (7th Cir. 2008), the Seventh Circuit considered a similar claim but reached a different outcome based on the State court's specific findings of fact on a more developed evidentiary record. Specifically, the State court had found that no jurors saw or knew about a stun belt after considering the conflicting accounts of three jurors and court officers. *Id.* at 822-23. The Seventh Circuit

12

USDC IN/ND case 3:18-cv-00972-JD-MGG   document 12   filed 03/09/21   page 13 of 14

credited the State court's finding as required by 28 U.S.C. § 2254(e)(1) and concluded

that the petitioner was not entitled to habeas relief for lack of prejudice. *Id.*

This case more closely resembles *Wrinkles* than *Stephenson.* As in *Wrinkles*, it is

significant that the State court found that no jurors saw or knew about Sturgis's

shackles. *See Roche v. Davis*, 291 F.3d 473, 483 (7th Cir. 2002) ("[W]hen the defendant

was shackled at trial, the key issues are whether the jury was aware of the shackles or

whether the shackles were readily visible."); *Stephenson v. State*, 864 N.E.2d 1022, 1033

(Ind. 2007) ("[F]ailure to object to restraints that are readily visible is substandard

performance of counsel."). Like *Wrinkles*, the post-conviction record supports this

finding given testimony about the efforts to conceal the use of shackles from the jury

and the juror affidavits. Though there may be some argument that one juror's

assumption amounted to actual awareness, the State court's finding on this point is not

unreasonable, so the court must defer to it on habeas review.

Next, unlike the petitioner in *Stephenson* who the jury sentenced to death after a

brief hearing, the jury here split the verdict by acquitting Sturgis of kidnapping after

hearing three days of testimony from twelve eyewitnesses in addition to Sturgis's

account presented through a detective. At the post-conviction evidentiary hearing, trial

counsel described the acquittal as a "significant result with the jury." ECF 5-8 at 61. The

prosecuting attorney agreed, testifying, "With what he had, I thought he did an

excellent job. I was surprised about the not guilty honestly. I would have thought that

we would have gotten the convictions as charged." *Id.* at 76. Consequently, the decision

to acquit Sturgis on the kidnapping charge provides a strong indication that the use of

13

shackles did not affect the jury's ability to fairly evaluate the evidence at trial or to render an impartial decision.

In sum, the court cannot find that the State court made an unreasonable determination regarding trial counsel's performance or prejudice. Therefore, the claim that trial counsel failed to object to the use of shackles is not a basis for habeas relief.

CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Sturgis to proceed further.

For these reasons, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on March 9, 2021

/s/ JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT